UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

WALTER LEROY,

Plaintiff,

v. Case No: 3:14cv284/MCR/CJK

MEDTRONIC, INC.,

Defendant.
_________________/

REPORT AND RECOMMENDATION

This medical device product liability action, removed from state court on the basis of diversity jurisdiction, is before the court upon defendant's motion to dismiss with prejudice under Rule 12(b)(6) of the Federal Rules of Civil Procedure (doc. 12), and amended request for judicial notice (doc. 18). Plaintiff, proceeding *pro se*, filed two responses in opposition to dismissal (docs. 15, 21). Plaintiff has not opposed defendant's amended request for judicial notice, although given the opportunity to do so (*see* doc. 19). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(E). Having fully considered the parties' submissions, the record and the relevant case law, the undersigned recommends that defendant's motion to dismiss and amended request to take judicial notice be granted and this case dismissed.

BACKGROUND

Procedural History and Allegations of Plaintiff's Complaint

Plaintiff, while represented by counsel, initiated this action on May 13, 2014, by filing a complaint in the First Judicial Circuit Court for Escambia County, Florida. (Doc. 1, Comp. Ex. 1, Compl.). (*Id.*). Plaintiff's complaint, which remains the operative pleading, alleges the following facts. Defendant Medtronic manufactured products known as a Medtronic D314TRG Protecta XT CRT-Defibrillator generator, a Medtronic 6949 Sprint Fidelis lead, a Medtronic 4194 Attain OTW lead, and a Medtronic 5076 CapSureFix Novus lead. (Compl. ¶ 6). Defendant warranted that these products were reasonably fit for their intended use as devices for pacing, sensing and defibrillation of the human heart. (*Id.* ¶ 7). On or about October 4, 2007, plaintiff had a Medtronic Concerto defibrillator generator, a Medtronic 6949 Sprint Fidelis lead, a Medtronic 4194 Attain OTW lead, and a Medtronic 5076 CapSureFix Novus lead implanted. (*Id.* ¶ 8). Plaintiff's Medtronic Concerto defibrillator generator was replaced on or about October 5, 2012, with a Medtronic D314TRG Protecta XT CRT-Defibrillator generator. (*Id.* ¶ 9). On or about April 2, 2013, plaintiff underwent additional surgery to extract and replace the defibrillator leads which plaintiff alleges were "defective." (*Id.* ¶ 10). Plaintiff alleges that upon information and belief, the lead which was in plaintiff's body was recalled due to high risk for failure. (*Id.* ¶ 11). Plaintiff asserts he is the end consumer of defendant's products (*id.* ¶ 12); that the products "were defective" and "were unreasonably dangerous" (*id.* ¶¶ 13, 14); and that "as a result of the defective nature of the leads, the Plaintiff underwent otherwise unnecessary surgery, bodily injury and resulting pain and suffering, and mental anguish, expense of hospitalization, medical and

nursing care and treatment, as a result of which plaintiff has been damaged." (*Id*. ¶ 15). As relief, plaintiff seeks "any and all damages and relief available and afforded under Florida law." (Compl. p. 1, Introduction).

Defendant removed this case to federal court on June 19, 2014. (Doc. 1). Plaintiff's counsel withdrew on July 8, 2014. (Doc. 7).

Defendant moves to dismiss the complaint with prejudice on the grounds that plaintiff's claims are preempted by federal law and, even if not preempted, fail to meet the pleading standards of *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). (Doc. 12). Defendant also requests that the court take judicial notice of several Food and Drug Administration (FDA) Premarket Approval (PMA) Database Listings and a Recall that are directly relevant to the issues herein. (Doc. 18). Plaintiff first responded to the motion to dismiss quite succinctly: "[M]y original complaint is my only response to defendant's request for dismissal." (Doc. 15, p. 1). Plaintiff then argued, without elaboration, in a second response, that defendant is not entitled to dismissal, because federal law does not provide complete immunity to medical device manufacturers. (Doc. 21). Plaintiff does not oppose defendant's amended request for judicial notice.

## LEGAL STANDARDS

### Preemption

The Supremacy Clause of the United States Constitution establishes that "the Laws of the United States . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Prior to 1976, "the introduction of new medical devices was left largely

for the States to supervise as they saw fit." *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 315, 128 S. Ct. 999, 1002, 169 L. Ed. 2d 892 (2008). In 1976, the United States Congress amended the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 360 *et seq*., by enacting the Medical Device Amendments of 1976 ("MDA"), 21 U.S.C. § 360c, *et seq*., "which swept back some state obligations and imposed a regime of detailed federal oversight." *Riegel*, 552 U.S. at 316, 128 S. Ct. 999.

The MDA groups medical devices into various classes, with the degree of federal oversight required depending on the class in which a given device falls. *See Riegel, supra*, 552 U.S. at 316-17 (citations omitted). "The devices receiving the most federal overnight are those in Class III, which include replacement heart valves, implanted cerebella stimulators, and pacemaker pulse generators." *Riegel*, 552 U.S. at 317 (citation omitted). "In general, a device is assigned to Class III if it cannot be established that a less stringent classification would provide reasonable assurance of safety and effectiveness, and the device is 'purported or represented to be for a use in supporting or sustaining human life or for a use which is of substantial importance in preventing impairment of human health,' or 'presents a potential unreasonable risk of illness or injury.'" *Riegel*, 552 U.S. at 317 (*quoting* 21 U.S.C. § 360c(a)(1)(C)(ii)). Premarket approval for Class III devices "is a 'rigorous' process." *Riegel*, 552 U.S. at 317 (*quoting Medtronic, Inc. v. Lohr*, 518 U.S. 470, 477, 116 S. Ct. 2240, 135 L. Ed. 2d 700 (1996)). The manufacturer must submit "what is typically a multivolume application", which the FDA spends an average of 1,200 hours reviewing. *Riegel*, 552 U.S. at 317-18 (citations omitted). The FDA grants premarket approval "only if it finds there is a 'reasonable assurance' of the device's 'safety and effectiveness,' § 360e(d)." *Riegel*, 522 U.S. at 318. Once a device has received premarket approval,

the MDA "forbids the manufacturer to make, without FDA permission, changes in design specifications, manufacturing processes, labeling, or any other attribute, that would affect safety or effectiveness." *Riegel* at 319 (*citing* 21 U.S.C. § 360e(d)(6)(A)(i)). "If the applicant wishes to make such a change, it must submit, and the FDA must approve, an application for supplemental premarket approval, to be evaluated under largely the same criteria as an initial application." *Riegel* at 319 (*citing* 21 U.S.C. § 360e(d)(6); 21 C. F. R. § 814.39(c)).

The MDA includes an express preemption provision for medical devices:

> [N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement –
>
> > (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and
> >
> > (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a). "The MDA expressly pre-empts only state requirements different from, or in addition to, any requirement applicable . . . to the device under federal law." *Wolicki-Gables v. Arrow Int'l, Inc.*, 634 F.3d 1296, 1300 (11th Cir. 2011) (*quoting Riegel*, 552 U.S. at 321, 128 S. Ct. 999).

The Supreme Court in *Riegel*, set forth two conditions that must exist in order for express preemption under § 360k to apply (and thus bar a common-law claim challenging the safety or effectiveness of a medical device marketed in a form that received premarket approval from the FDA): (1) the Federal Government established "requirements applicable" to the device at issue; and (2) the plaintiff's common-law

claims concerning the device include requirements that are "different from, or in addition to" federal requirements. *Riegel*, 552 U.S. at 315, 321-23. The first *Riegel* condition is satisfied when the FDA authorizes commercial distribution of a Class III medical device after the PMA process. *Id*. "[C]ourts across the country have applied Section 360k(a) broadly, preempting all manner of claims from strict products liability and negligence, to breach of warranty, to failure to warn and manufacturing-and-design-defect, to negligence *per se*." *In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig.*, 592 F. Supp. 2d 1147, 1152 (D. Minn. 2009) ("*Sprint Fidelis Leads I*") (citations omitted), *affirmed*, 623 F. 3d 1200 (8th Cir. 2010) ("*Sprint Fidelis Leads II*").

The *Riegel* Court clarified, in dicta, that § 360k preemption is not absolute in that it "does not prevent a State from providing a damages remedy for claims premised on a violation of FDA regulations," because "the state duties in such a case 'parallel,' rather than add to, federal requirements." *Riegel* at 330. Such claims are referred to as "parallel" claims. The Eleventh Circuit has explained the parallel claim principle as follows:

> "In order for a state requirement to be parallel to a federal requirement, and thus not expressly preempted under § 360k(a), the plaintiff must show that the requirements are 'genuinely equivalent.' State and federal requirements are not genuinely equivalent if a manufacturer could be held liable under the state law without having violated the federal law."

*Wolicki-Gables*, 634 F.3d at 1300 (*quoting McMullen v. Medtronic, Inc.*, 421 F.3d 482, 489 (7th Cir. 2005)).

The parallel claim, however, must arise from an actual state-law requirement; it cannot exist "solely by virtue of the FDCA . . . requirements." *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 352-53, 121 S. Ct. 1012, 148 L. Ed. 2d 854

(2001). This is so, because in addition to its express preemption provision, the MDA includes an implicit preemption provision requiring that any action "for enforcement or to restrain violations" of the FDCA be brought "by and in the name of the United States." 21 U.S.C. § 337(a); *see also Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. at 352, 121 S. Ct. 1012. In other words, actions which seek to enforce an exclusively federal requirement not grounded in traditional state tort law are impliedly preempted by section 337(a). *Buckman*, 531 U.S. at 352-53 (holding that claims that "exist solely by virtue of the FDCA . . . requirements" are impliedly preempted). As the Eighth Circuit explained in *Sprint Fidelis Leads II*:

> *Riegel* and *Buckman* create a narrow gap through which a plaintiff's state-law claim must fit if it is to escape express or implied preemption. The plaintiff must be suing for conduct that violates the FDCA (or else his claim is expressly preempted by § 360k(a)), but the plaintiff must not be suing because the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman* ).

623 F.3d at 1204 (*quoting Riley v. Cordis Corp.*, 625 F. Supp. 2d 769, 777 (D. Minn. 2009)).[1] The Eleventh Circuit has established a pleading standard for parallel state law claims which requires a plaintiff to do more than baldly assert that the device violated federal standards:

> Plaintiffs cannot simply incant the magic words '[defendants] violated FDA regulations' in order to avoid preemption. Parallel claims must be specifically stated in the initial pleadings. A plaintiff must allege that [the] defendant violated a particular federal specification referring to the device at issue. To properly allege parallel claims, the complaint must set forth facts pointing to specific PMA requirements that have been

---

[1] The state law claim must be based on the manufacturer's violation of a state law requirement that parallels a federal requirement for premarket approval, but that is independent of the federal requirement (i.e., the parallel state law claim must exist even in the absence of federal law).

violated.

*Wolicki-Gables*, 634 F.3d at 1300-01 (second alteration in original) (citations omitted) (internal quotation marks omitted).

Motions to Dismiss under Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a complaint to be dismissed if the facts as pleaded do not state a claim to relief that is plausible on its face. *See Twombly*, 550 U.S. at 570 (retiring the negatively-glossed "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim). In determining whether the complaint states a claim upon which relief may be granted, the court accepts all well-pleaded factual allegations in the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). There are a few exceptions to this rule, such as where the facts alleged are internally inconsistent or where they run counter to facts of which the court can take judicial notice. 5B CHARLES A. WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2008). Further, only well pleaded factual allegations are taken as true and only reasonable inferences are drawn in favor of the plaintiff. *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (holding that courts must follow the Supreme Court's "'two-pronged approach' of first separating out the complaint's conclusory legal allegations and then determining whether the remaining well-pleaded factual allegations, accepted as true, 'plausibly give rise to an entitlement to relief.'" (*quoting Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950)); *see*

*also Randall v. Scott*, 610 F.3d 710, 709-10 (11th Cir. 2010) (holding that a district court determining whether to dismiss a complaint for failure to state a claim "shall begin by identifying conclusory allegations that are not entitled to an assumption of truth – legal conclusions must be supported by factual allegations."); *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)[2] (stating that "unwarranted deductions of fact are not admitted as true"). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (*quoting Twombly*, 550 U.S. at 555); *see also Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) (noting that courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

The Supreme Court reiterated in *Iqbal, supra*, that although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949. A complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The mere possibility that the defendant acted unlawfully is insufficient to survive dismissal for failure to state a claim. *Id.* The complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965, that is, "across the line from conceivable to plausible." *Id.*, 550 U.S. at 570, 127 S. Ct. at 1974.

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

A complaint is also subject to dismissal under Rule 12(b)(6) when its allegations – on their face – show that an affirmative defense bars recovery on the claim. *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001); *see also Jones v. Bock*, 549 U.S. 199, 215, 127 S. Ct. 910, 920-21, 166 L. Ed. 2d 798 (2007) (reiterating that principle and providing, as an example, that if a complaint's allegations show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim).

Judicial Notice

Defendant seeks judicial notice of several FDA Premarket Approval Database Listings relating to the various components of the products at issue in this litigation. (Doc. 18). Defendant also requests that judicial notice be taken of the Recall of the Medtronic Sprint Fidelis Lead. (*Id.*). Federal Rule of Evidence 201 provides that a court may, when requested by a party who supplies "the necessary information," take judicial notice of an adjudicative fact "at any stage of the proceeding" if it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Courts in this circuit and elsewhere have taken judicial notice of similar FDA public records under similar circumstances, and without transforming a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *See, e.g., Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (”[W]e hold that it was appropriate for the court to take judicial notice, under Rule 12(b)(6), of the PMA the FDA granted to Stryker for marketing its [medical device]."); *Hawkins v. Medtronic, Inc.*, — F. Supp. 3d —, 2014 WL 6611876, at *4 n.2 (E.D. Cal. Nov. 20, 2014) (taking judicial notice, in context of motion to dismiss on grounds of federal preemption, of FDA's PMA approval letter for Class III

medical device); *Sons v. Medtronic, Inc.*, 915 F. Supp. 2d 776, 781 (W.D. La. 2013) (taking judicial notice, in context of motion to dismiss on grounds of federal preemption, of FDA website indicating certain Medtronic medical devices, including the Medtronic 5076 CapSureFix Novus lead, are Class III PMA medical devices); *Gross v. Stryker Corp.*, 858 F. Supp. 2d 466, 481 n.26 (W.D. Pa. 2012) (taking judicial notice of FDA approval documents); *see also Stanifer v. Corin USA Ltd., Inc.*, No. 6:14cv1192, 2014 WL 5823319, at *3 and n.6 (M.D. Fla. Nov. 10, 2014) (taking judicial notice, in context of motion to dismiss on grounds of federal preemption, of PMA documents accessible on the FDA's website; citing other cases from the Middle District and cases from other federal district courts that have done the same).

Plaintiff has not opposed defendant's request to take judicial notice, and does not dispute that the FDA website is a source of public documents "whose accuracy cannot reasonably be questioned." Fed. R. Civ. P. 201(b)(2). Accordingly, like other courts faced with this issue, this court should take judicial notice of the PMA Database Listings and Recall – documents that are publicly available on the FDA website and "whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Printouts of the relevant FDA documents (the PMA Database Listings and Recall) are part of the record as attachments to defendant's Amended Request for Judicial Notice. (Doc. 18, Exs. 1-6).

DISCUSSION

Defendant argues that plaintiff's claims are barred by explicit preemption because the defibrillator leads at issue are Class III medical devices that received premarket approval from the FDA. Defendant argues that its voluntary Recall does

not undermine the preemptive effect of the device's premarket approval. Defendant further argues that plaintiff has not alleged a "parallel claim" under the *Wolicki-Gables* standard. Defendant argues in the alternative that even if federal preemption did not apply, plaintiff's complaint would be subject to dismissal because it fails to meet the *Iqbal/Twombly* standard.

Plaintiff's first response in opposition states, in total:

> Plaintiff respectfully oppose[s] the defendant's motion to dismiss. And do hereby request to this honorable court that my original complaint is my only response to defendant's request for dismissal. Please see attached. Thank you, and may god bless these honorable courts.

(Doc. 15). Plaintiff attached a copy of the original complaint with counsel's signature crossed out and plaintiff's signature provided. In a subsequently filed response, plaintiff asserts defendant is not entitled to dismissal on grounds of preemption, because defendant was "grossly negligent," and because manufacturers "who violate federal law cannot hide behind the shield of immunity and are liable under Florida tort law for any personal injuries caused by their violations." (Doc. 21, pp. 1-2).

Plaintiff's Claims Are Expressly Preempted

Plaintiff's claims involve the Medtronic 6949 Sprint Fidelis lead, the Medtronic 4194 Attain OTW lead, and the Medtronic 5076 CapSureFix Novus lead. Each of these leads is s Class III medical device that received FDA approval through the PMA process. (Doc. 18, Exs. 2, 4 and 3, respectively).[3] The Sprint Fidelis lead,

---

[3]The complaint alleges that plaintiff was implanted with a Medtronic Concerto defibrillator in 2007, which was replaced in 2012, with a Medtronic D314TRG Protecta SC CRT-Defibrillator. (Doc. 1, Comp. Ex. 1, Compl. ¶¶ 9-10). The complaint does not allege this replacement was due to a defect in the Concerto Defibrillator. The only express allegation of a defect relates to the defibrillator leads, which were replaced in 2010. (Compl. ¶¶ 10-11, 15). In any event, Medtronic's

which appears to be the focus of plaintiff's allegations, was approved via a supplemental PMA application to the original Transvene lead PMA. The FDA approved the original PMA for the Transvene lead on December 9, 1993 (PMA No. 920015), (doc. 18, Ex. 1), and approved the PMA Supplement for the Sprint Fidelis lead on June 8, 2004 (PMA No. 920015, S029), (doc. 18, Ex. 2). Medtronic voluntarily withdrew the Sprint Fidelis lead from the market on October 15, 2007. (Doc. 18, Ex. 6).

Any device that has received premarket approval, such as those at issue here, automatically satisfies *Riegel*'s first condition. *See Wolicki-Gables*, 634 F.3d at 1301 (holding that medical device's pre-market approval "imposes specific requirements on it that are sufficient to preempt a state law claim"); *Bass v. Stryker Corp*., 669 F.3d 501, 507 (5th Cir. 2012) (applying *Riegel* and stating that "[d]evices that are approved through PMA procedures automatically satisfy the 'federal requirements' prong" of the preemption inquiry (*citing Riegel*, 552 U.S. at 322)).

With regard to *Riegel*'s second condition, the question is whether plaintiff's claims would impose state law requirements different from, or in addition to those under the federal regime. Plaintiff's complaint does not label his claims or specify any theory of liability; rather, plaintiff merely alleges the leads were "defective" and "unreasonably dangerous" (Compl. ¶¶ 13-14); references the Recall (Compl. ¶ 11), the cause of which was determined by the FDA as "DESIGN: Component Design/Selection" (Doc. 18, Ex. 6); and asserts injury "[a]s a result of the defective nature of the leads" (Compl. ¶ 15). Plaintiff's claim appears to sound in design

---

Concerto Defibrillator also is a Class III medical device that received FDA premarket approval. (Doc. 18, Ex. 5).

defect, which is plainly preempted. In *Sprint Fidelis Leads I*, the federal district court assigned all federal cases involving the Sprint Fidelis lead (the lead on which plaintiff's complaint focuses) held that each of the twenty-one distinct state law claims asserted in that multidistrict litigation, including failure to warn, defective design and manufacturing, breach of express warranty and fraud, was expressly preempted. *Id*., 592 F. Supp. 2d at 1152. The Eighth Circuit affirmed the district court's dismissal of the consolidated complaint with prejudice, under Rule 12(b)(6). *Sprint Fidelis Leads II, supra*. Similarly, in *Wolicki-Gables*, the Eleventh Circuit concluded that Florida state laws concerning (1) strict liability for manufacturing and design defect and failure to warn, and (2) liability for negligent design, manufacture and assembly, imposed requirements that were "different from, or in addition to" the federal regulations governing manufacturing practices of Class III medical devices and the design of Class III medical devices. *Id*., 634 F.3d at 1301 (adopting underlying district court's analyses of relevant Florida state laws and federal regulations governing Class III medical devices to support its conclusion that state law claims were expressly preempted)); *see also Riegel*, 552 U.S. at 320 (affirming lower court's conclusion that MDA preempted Florida plaintiff's state law claims of strict liability and negligence in the design of the Class III medical device); *Sprint Fidelis Leads II*, 623 F.3d at 1206 (holding that those claims alleging Medtronic designed the Sprint Fidelis Leads "in a dangerous and defective condition" constitute "attacks on the risk/benefit analysis that led the FDA to approve an inherently dangerous Class III device and are expressly preempted by § 360(k)"; holding further that "[a]bsent concrete allegations that the product sold by Medtronic was not the product design approved in the PMA Supplement, these are not parallel claims.");

*Lederman v. Howmedica*, 950 F. Supp. 2d 1246 (M.D. Fla. 2013) (granting motion to dismiss under Rule 12(b)(6); holding that Florida plaintiff's state-law manufacturing defect claim was preempted); *McClelland v. Medtronic*, 944 F. Supp. 2d 1193 (M.D. Fla. 2013) (granting motion to dismiss under Rules 8(a) and 12(b)(6); holding that Florida plaintiff's state-law negligence claim alleging breach of duty to warn was preempted by MDA).

Plaintiff's complaint does not allege that the design of the leads he received deviated from the federal requirements for those devices. Although plaintiff references the Recall, the FDA found that the cause of the recall was "Component Design/Selection," not a failure to comply with the PMA requirements for the device. (Doc. 18, Ex. 6). The fact that Medtronic initiated a voluntary withdrawal of the Spring Fidelis leads from the market in October of 2007 in an action that the FDA classified as a recall does not, as a matter of law, undermine the preemptive effect of the device's premarket approval. *See Sprint Fidelis Leads I*, 592 F. Supp. 2d at 1155, *affirmed*, 623 F. 3d 1200 (8th Cir. 2010) (rejecting plaintiffs argument that Medtronic lost its preemption argument when the Sprint Fidelis leads were recalled; concluding that because "the PMA process is governed by a completely separate statutory and regulatory regime than that governing withdrawal of a PMA," the "assumption that the recall invalidated the leads' PMA" is "faulty"); see also *Simmons v. Boston Scientific Corp.*, No. CV 12-7962 PA FFMX, 2013 WL 1207421, at *4 (C.D. Cal. Mar. 25, 2013) ("[C]ourts have recognized that product recalls do not create a presumption that FDA requirements have been violated." (citing cases)).

Plaintiff's complaint fails to identify any specific federal requirement in the PMA approval for the Sprint Fidelis Lead (or any other medical device identified in

his complaint) that forms the basis for a non-preempted parallel claim. Plaintiff's complaint also fails to allege a connection between a specific defect in the device in violation of federal regulations and plaintiff's specific injury. Plaintiff's failure to allege a parallel claim with the detail required by *Twombly, supra*; *Iqbal, supra*; and *Wolicki-Gables, supra*, requires dismissal of this case. *See, e.g., Wolicki-Gables,* 634 F.3d at 1301-02 (holding that MDA preempted Florida plaintiffs' state law claims against medical device manufacturer based on strict liability and negligence for unspecified manufacturing and design defects in device; device was Class III medical device with FDA premarket approval, and plaintiffs' complaint failed to allege facts demonstrating the presence of the elements of a parallel claim; plaintiffs "d[id] not set forth any specific problem, or failure to comply with any FDA regulation that can be linked to the injury alleged"); *Funk*, 631 F.3d at 782 (affirming dismissal of complaint attempting to assert parallel claim based on manufacturing defect; the complaint was "impermissibly conclusory and vague" in that it failed to specify the manufacturing defect, failed to specify a causal connection between the failure of the specific manufacturing process and the specific defect in the process that caused the plaintiff's personal injury, failed to allege how the manufacturing process failed or how it deviated from the FDA approved manufacturing process, and instead "relie[d] on *res ipsa loquitur* to suggest only . . . 'that the thing speaks for itself.'") (*citing Iqbal, supra*).

To the extent plaintiff could eventually succeed in a claim that rests outside those preempted by § 360k, it is unclear from the complaint as it now stands how such a claim would appear. It is not the responsibility of this court to restructure plaintiff's suit to allege claims with some potential for success under the FDCA. *See*

*James Cape & Sons Co. v. PCC Const. Co.*, 453 F.3d 396 (7th Cir. 2006) ("District judges are not mind readers, and should not be required to explain to parties whether or how their complaints could be drafted to survive a motion to dismiss."). At this stage, the undersigned finds only that every aspect of the complaint in its current form is preempted pursuant to § 360k, and does not plausibly allege a parallel claim that could survive preemption. As such, the complaint must be dismissed.

Whether Dismissal Should Be With Or Without Prejudice

Having concluded that plaintiff's claims are preempted and that plaintiff fails to adequately plead a parallel claim surviving preemption, the court must determine whether to dismiss the complaint with or without prejudice. For the reasons that follow, the undersigned concludes that dismissal without prejudice is appropriate.

Defendant is seeking dismissal with prejudice of an initial complaint at the pleading stage prior to completion of discovery. This is plaintiff's initial complaint. Although plaintiff's complaint was prepared by counsel, plaintiff became *pro se* shortly thereafter (two months). (Docs. 5, 7). It does not appear the parties have engaged in formal discovery. The District Judge issued an Initial Scheduling Order ("ISO") on June 20, 2014, while plaintiff was represented by counsel, requiring the parties to file their Rule 26 joint report by August 4, 2014. (Doc. 4). The ISO imposed a discovery deadline of November 19, 2014. (Doc. 4). Plaintiff's counsel withdrew on July 8, 2014, a little more than two weeks after issuance of the ISO. (Docs. 5, 7). The court tolled all deadlines for 30 days to enable plaintiff to retain new counsel. (Doc. 7). On August 14, 2014, the District Judge informed the parties that the ISO deadlines were no longer tolled, and referred the case to the undersigned as a *pro se* case. (Doc. 8). After the undersigned ordered the parties to file their Rule

26 joint report, defendant filed a motion to stay all pretrial deadlines for 60 days (doc. 10) asserting there was "a reasonable chance of resolving this matter by settlement within the next 60 days." (Doc. 10 ¶ 6). Defendant had the benefit of some informal discovery. (Doc. 10 ¶ 6 (noting that after plaintiff became *pro se*, plaintiff, in aid of settlement discussions, agreed to provide and did provide defendant's counsel with some of his medical records)). The undersigned stayed pretrial deadlines until October 13, 2014. (Doc. 11). On October 13, 2014, defendant filed its present motion to dismiss. (Doc. 12). The undersigned ordered the parties to file their Rule 26 joint report, to provide the court with a report on the status of discovery, and to provide each other with their Rule 26(a)(1) initial disclosures. (Doc. 16). The parties filed their joint report, but did not indicate whether, or to what extent, they had conducted discovery (formal or informal). The parties merely requested a discovery deadline of November 2, 2015, and communicated plaintiff's request for "a conference with the Court before entry of the Scheduling Order." (Doc. 20, p. 3). In a similarly non-responsive fashion, the parties informed the court that they had unilaterally decided to wait to exchange their Rule 26(a)(1) disclosures until after the court ruled on defendant's motion to dismiss. (Doc. 20, p. 1).

Given plaintiff's *pro* se status and the procedural history of this case, the undersigned is reluctant at this time to foreclose plaintiff from amending his complaint to attempt to plead a parallel claim in compliance with the pleading requirements of *Wolicki-Gables, supra*, if he can do so in good faith consistent with his Rule 11 obligations. *Compare McClelland v. Medtronic*, 944 F. Supp. 2d 1193 (M.D. Fla. 2013) (dismissing second amended complaint <u>with prejudice</u> under Rule 12(b)(6) on grounds of federal preemption and for plaintiff's failure to plead parallel

claim; dismissal with prejudice occurred after parties conducted discovery and after plaintiff had twice amended to attempt to plead a parallel claim), *with Lederman v. Howmedica Osteonics Corp.*, 950 F. Supp. 2d 1246 (M.D. Fla. 2013) (dismissing first amended complaint without prejudice under Rule 12(b)(6) on grounds of federal preemption and for plaintiff's failure to plead parallel claim where parties had not conducted discovery; providing plaintiff, *sua sponte,* final opportunity to amend to plead parallel claim within time certain (fourteen days)). Here, the question is close. Even though the parties have not engaged in discovery, plaintiff has made no suggestion at all concerning his desire, or ability, to state a parallel claim, despite having had months to explore the issue, and having filed two responses to the defendant's dismissal motion, neither of which suggest that plaintiff wishes to – or even can – cure the defects identified in this report and recommendation. Nevertheless, caution wins the day and the undersigned will recommend one opportunity to amend.

Accordingly, it is respectfully RECOMMENDED:

1. That defendant's Amended Request to Take Judicial Notice (doc. 18) be GRANTED.

2. That defendant's Motion to Dismiss (doc. 12) be GRANTED to the extent that plaintiff's complaint (doc. 1) should be DISMISSED WITHOUT PREJUDICE to plaintiff's filing an amended complaint (pleading a sufficiently specific parallel claim), if he can do so in good faith consistent with his Rule 11 obligations, within fourteen (14) days from the date this Report and Recommendation is adopted.

3. That plaintiff's failure to file an amended complaint within the time provided result in the entry of a final judgment, without further notice, dismissing this

case with prejudice.

At Pensacola, Florida this 12th day of February, 2015.

/s/ Charles J. Kahn, Jr.

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy hereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).